IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AUTOMOTIVE FINANCE CORP., | : | |
| Plaintiff, | : | Case No. 2:04-cv-261 |
| v. | : | Judge Holschuh |
| WW AUTO, et al., | : | Magistrate Judge Abel |
| Defendants. | : | |
| | : | |

**MEMORANDUM & ORDER**

Plaintiff, Automotive Finance Corp. ("AFC"), brought this action against Defendants WW Auto, John Weisenberger, and EM Sales, Inc. ("EMS"). Plaintiff makes numerous claims against Defendant EMS; however, the First Amended Complaint asserts a single claim against Defendants WW Auto and Weisenberger, a claim of civil conspiracy. This Court's jurisdiction is based on diversity of citizenship. See 28 U.S.C. § 1332. This matter is currently before the Court on the motion of Defendants WW Auto and Weisenberger to dismiss the First Amended Complaint against them for failure to state a valid claim of civil conspiracy. For the reasons stated below, this Court **DENIES** that motion.

**I.      Background**

Plaintiff AFC is an Indiana corporation that provides floorplanning – inventory loans that automobile dealerships use to purchase vehicles at auctions. (Am. Compl. ¶ 8). Defendants EMS and WW Auto are used automobile dealerships, both operating at 2357 Harrisburg Pike, Grove City, Ohio; Defendant Weisenberger is the sole owner of WW Auto. (Id. ¶¶ 2-4).

On September 26, 2002, EMS and AFC entered into an agreement (the "EMS Note") under which AFC provided a $650,000 loan to EMS for the purpose of purchasing vehicles to be resold at EMS's dealership. (Id. ¶ 10). As security for this loan, AFC retained the original titles to each of those vehicles. (Id. ¶ 9). AFC would release the original title to EMS after EMS repaid the loan for that particular vehicle, at which point EMS could then transfer the title to the vehicle's new purchaser. (Id. ¶ 9).

Over the next year, pursuant to the EMS Note, EMS purchased at least 87 vehicles financed by AFC. (Id. ¶¶ 23-24). In August of 2003, EMS issued numerous checks, totaling $428,781, to AFC, but almost immediately, EMS requested that AFC not cash those checks because of a "problem" with EMS's bank account. (Id. ¶¶ 20-21). In response, AFC conducted an inquiry as to the status of all vehicles purchased under the EMS Note. (Id. ¶ 22). AFC found that 46 of the vehicles purchased under the EMS Note had already been sold by EMS – even though AFC still retained the original titles to those vehicles. (Id. ¶ 24). Allegedly, EMS had managed to sell those vehicles without their original titles, depriving AFC of its security interest in those vehicles.

AFC alleges that this was accomplished through a conspiracy involving all three Defendants. According to AFC, EMS would first procure a duplicate certificate of title by falsely representing to the Ohio Bureau of Motor Vehicles that EMS had lost the original title. (Id. ¶ 25). Using these duplicate titles, EMS then allegedly transferred the vehicles to Defendant WW Auto. (Id. ¶ 26). According to AFC, "WW Auto, through Defendant Weisenberger, then obtained new certificates of title and transferred the vehicles back to EMS." (Id. ¶ 27). By cleansing the titles in this manner, EMS could then sell the vehicles to the public without

repaying AFC. (Id. ¶¶ 27-28).

Plaintiff filed this action against Defendants on April 6, 2004. Plaintiff's First Amended Complaint, filed on September 30, 2004, asserts numerous causes of action against Defendant EMS – breach of the EMS Note, unjust enrichment, check deception, deception and fraud, civil theft, three counts of fraudulent conveyance, and civil conspiracy. Against Defendants WW Auto and Weisenberger, the First Amended Complaint asserts just one cause of action, civil conspiracy. (Count IX). Defendants WW Auto and Weisenberger have moved to dismiss the claim against them, on the grounds that it fails to state a claim upon which relief can be granted under Ohio law.

## II.     Standard for Granting Motion to Dismiss for Failure to State a Claim

The purpose of a motion under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint. This rule permits courts to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. See Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974); Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993); Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995); Murphy v. Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir.1997). Although the Court must liberally construe the complaint in favor of the party opposing the motion to dismiss, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405-06 (6th Cir. 1998). The Court will, however,

3

indulge all reasonable inferences that might be drawn from the pleading. See Fitzke v. Shappell, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).

When determining the sufficiency of a complaint in the face of a motion to dismiss, a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Lewis, 135 F.3d at 405. Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. See Scheuer, 416 U.S. at 236; McDaniel v. Rhodes, 512 F. Supp. 117, 120 (S.D. Ohio 1981).

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Conley, 355 U.S. at 47; Dunn v. Tennessee, 697 F.2d 121, 125 (6th Cir. 1982), cert. denied, 460 U.S. 1086 (1983); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Bare assertions of legal conclusions are insufficient. See id.; Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir.1993). The Court will grant a motion for dismissal under Rule 12(b)(6) only if there is an

absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim.

### III.    Discussion

In Count IX of the First Amended Complaint, AFC alleges that "EMS, WW Auto and Weisenberger formed a malicious combination by orchestrating a scheme to defraud AFC of its interest in the Purchase Money Inventory by obtaining duplicate titles and then new, original titles from the multiple transfers between EMS and WW Auto through Weisenberger." (Compl. ¶ 62). AFC also alleges that the scheme was "carried out by a pattern of fraud, deceit and omission of material fact with the intent to deprive AFC of its interest in the Purchase Money Inventory." (Id. at ¶ 63). Defendants WW Auto and Weisenberger (hereinafter "Defendants") argue that Plaintiff has failed to state a claim of civil conspiracy against them under Ohio law.

As stated by the Ohio Supreme Court, "[t]he tort of civil conspiracy is 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" Williams v. Aetna Fin. Co., 83 Ohio St. 3d 464, 475, 700 N.E.2d 859, 868 (1998) (citations omitted). Furthermore, "[a]n underlying unlawful act is required before a civil conspiracy claim can succeed. The malice involved in the tort is 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" Id. (citations omitted).

In order to succeed on a claim of civil conspiracy, a plaintiff must demonstrate: (1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. See Universal Coach, Inc.

5

v. New York City Transit Auth., Inc., 90 Ohio App. 3d 284, 292, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993).

While Plaintiff and Defendants appear to agree on this formulation of Ohio law, Defendants nonetheless argue that AFC's claim is inadequate on two grounds. First, they argue that the Amended Complaint fails to set forth the necessary elements of a claim for civil conspiracy. They claim that AFC has failed to allege that WW Auto or John Weisenberger committed an unlawful act independent of the alleged conspiracy. In a related argument, Defendants argue that the civil conspiracy claim fails because AFC has not asserted any independent tort claims against WW Auto or John Weisenberger. Second, Defendants claim that the Complaint fails to allege that WW Auto or John Weisenberger knew of the tortious acts committed by EMS against AFC. These arguments will be addressed in turn.

    A.    **Underlying Unlawful Act Independent of Alleged Conspiracy**

Defendants first urge the Court to dismiss the civil conspiracy claim against them because Plaintiff has failed to allege that they committed an unlawful act independent of the alleged conspiracy, and because Plaintiff has not asserted any independent tort claims against them. As Defendants note, the Amended Complaint makes little mention of WW Auto and John Weisenberger. It alleges that after EMS obtained duplicate certificates of title, "EMS transferred the vehicles to WW Auto." (Compl. ¶ 26). It then alleges that "WW Auto, through Weisenberger, then obtained new certificates of title and transferred the vehicles back to EMS." (Id. at ¶ 27). AFC, however, also contends that this was part of a scheme, orchestrated by EMS, WW Auto, and Weisenberger, carried out with the intent of defrauding AFC of its interest in the Purchase Money Inventory. (Id. at ¶¶ 62-63).

As the court noted in Dickerson Internationale, Inc. v. Klockner, 139 Ohio App. 3d 371, 380, 743 N.E.2d 984, 990 (Ohio Ct. App. 2000), "[a]n act of fraud can serve as the underlying unlawful act or tort." Defendants note that neither WW Auto nor Weisenberger is named as a defendant in connection with the fraud claim itself. In fact, Plaintiff asserts no claims against them other than the claim of civil conspiracy. These omissions, however, are not fatal.

While Plaintiff must prove the *existence* of an unlawful act independent of the alleged conspiracy, Plaintiff does not necessarily need to prove that the unlawful act at issue was committed by WW Auto and Weisenberger. If Plaintiff can prove that WW Auto and John Weisenberger conspired with EMS, then they can be held liable for EMS's unlawful acts. Ohio law does not require each member of an alleged conspiracy to have committed an unlawful act – the unlawful acts of any one member of the conspiracy will satisfy the "underlying unlawful act" requirement. As the Ohio Supreme Court stated in Williams:

> In a conspiracy, the acts of coconspirators are attributable to each other. See Prosser & Keeton on Torts (5 Ed.1984) 323, Section 46 ("All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's act done for their benefit, are equally liable." [Footnotes omitted.] ).

Williams, 83 Ohio St.3d at 476, 700 N.E.2d at 868.

The facts of Williams are illustrative. In Williams, the alleged conspiracy involved an individual named Chris Blair and a finance company called ITT Financial Services. Blair contacted homeowners about home improvements and helped them obtain financing through ITT. Blair took the loan proceeds and subcontracted the home improvements, but most of the work was never done. One of the homeowners filed suit, alleging that Blair and ITT collaborated in a scheme to defraud homeowners. A jury returned a verdict in Plaintiff's favor,

7

and found that ITT had participated in the alleged civil conspiracy. The trial court denied ITT's motion for judgment notwithstanding the verdict, and the court of appeals affirmed, finding that ITT itself participated in the civil conspiracy by fraudulently concealing its knowledge of Blair's fraudulent activities.[1] The Ohio Supreme Court specifically disagreed with this reasoning of the appellate court and found it unnecessary to consider whether ITT itself had committed any unlawful act. Instead, the Ohio Supreme Court found that Blair's unlawful acts could be attributed to ITT because of the existence of the conspiracy. Id.

In a case involving similar facts, homeowners filed suit against a home improvement company, a mortgage broker, and a lender, alleging that defendants had acted in concert to defraud homeowners. See Matthews v. New Century Mortgage Corp., 185 F. Supp. 2d 874 (S.D. Ohio 2002). The lender moved to dismiss the civil conspiracy claim, arguing that Plaintiffs failed to allege that it engaged in any underlying tortious conduct. The court, interpreting Ohio law, denied the motion. Citing Williams, the court noted that if Plaintiffs could prove the existence of a conspiracy, then the lender could be held liable for the fraudulent conduct of its co-conspirators. Id. at 890. See also Gibson v. City Yellow Cab Co., No. 20167, 2001 Ohio App. LEXIS 518, at *9-13 (Ohio Ct. App. 2001) (holding that the district court erred in dismissing civil conspiracy claim against corporate attorney and accountant; even though they were not the parties alleged to have committed the unlawful acts, they could be held liable as co-conspirators).

---

[1] The Court of Appeals found that ITT had violated a special duty to disclose its knowledge of Blair's activity because of the close relationship between Blair and some ITT workers.

Applying the law to the facts of this case, assuming that Plaintiff can prove the existence of a conspiracy, any unlawful acts, including torts, committed by EMS in furtherance of the alleged conspiracy would be attributable to WW Auto and Weisenberger, and would satisfy the "underlying unlawful act" element.  Plaintiff has alleged that EMS engaged in a number of independent unlawful acts in furtherance of the alleged conspiracy, including deception and fraud, and fraudulent conveyance.  Defendants have not argued that any of these claims against EMS are improperly pleaded or should otherwise be dismissed.  Because the Defendants have not challenged the validity of the claims against EMS, their validity will be assumed for purposes of this motion.

In summary, while Plaintiff is required to prove the existence of some unlawful act independent of the civil conspiracy itself, that unlawful act does not need to be committed by each of the alleged co-conspirators.  Because the alleged unlawful conduct of EMS may be attributable to WW Auto and John Weisenberger as co-conspirators, the allegations in the Amended Complaint are sufficient to state a claim of civil conspiracy against WW Auto and John Weisenberger.

**B.     Knowledge**

Defendants' second argument is that Plaintiff has failed to allege "that WW Auto or John Weisenberger had any knowledge of the tortuous acts committed by EMS against AFC so as to justify any allegations that WW Auto or John Weisenberger conspired with EMS against AFC." (Mot. to Dismiss at 7).  A plaintiff, however, is "not required to plead with particularity each and every element of the claim of civil conspiracy."  Universal Coach, 90 Ohio App. 3d at 292, 629 N.E.2d at 33.  As discussed earlier, when reviewing the sufficiency of allegations in connection

9

with a motion to dismiss, this Court must indulge all reasonable inferences that might be drawn from the pleading. See Fitzke, 468 F.2d at 1076 n.6.

In this case, the allegations contained in the Amended Complaint easily support an inference that WW Auto and John Weisenberger knowingly participated in the alleged conspiracy. Plaintiff alleges that "WW Auto, through Weisenberger, . . . obtained new certificates of title and transferred the vehicles back to EMS." (Compl. ¶ 27). Plaintiff also alleges that "EMS, WW Auto and Weisenberger formed a malicious combination by orchestrating a scheme to defraud AFC of its interest in the Purchase Money Inventory by obtaining duplicate titles and then new, original titles from the multiple transfers between EMS and WW Auto through Weisenberger. This scheme propounded by EMS, WW Auto and Weisenberger was carried out by a pattern of fraud, deceit and omission of material fact with the intent to deprive AFC of its interest in the Purchase Money Inventory." (Compl. ¶¶ 62-63).

Citing Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434 (6th Cir. 1988), Defendants argue that because the Complaint does not allege that they knew of EMS's wrongful acts, it should be presumed that they had no such knowledge. In Scheid, plaintiff brought a claim of age discrimination. In order to establish a prima facie case, she was required to show that she: (1) was a member of a protected class; (2) was discharged; (3) was qualified for the position; and (4) was replaced with a younger employee or – because her position was eliminated as part of a corporate reorganization – that there was additional direct, circumstantial, or statistical evidence that her age played a part in the decision. The court noted that her complaint "failed to allege, directly or inferentially, *any* facts in support of the fourth material element." Id. at 437. She simply alleged that she was "wrongfully discharged" and that this was

"discriminatory in nature." Id. The Sixth Circuit agreed with the district court that these allegations were insufficient to state a claim of age discrimination. It noted that "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." Id. at 437 (citing O'Brien v. DiGrazia, 544 F.2d 543, 546 n.3 (1st Cir. 1976)). In Scheid, absent any factual allegations to even inferentially support the fourth required element, the Court found that dismissal was proper.

This case, however, is clearly distinguishable from Scheid. Plaintiff's Amended Complaint specifically alleges that WW Auto and John Weisenberger, together with EMS, "formed a malicious combination," "orchestrat[ed] a scheme to defraud," and acted "with the intent to deprive AFC of its interest." These allegations clearly imply that WW Auto and John Weisenberger had the requisite knowledge.

Viewing the allegations in a light most favorable to AFC and indulging all reasonable inferences its favor, the Court concludes that the allegations contained in the Amended Complaint are sufficient to state a claim of civil conspiracy against WW Auto and John Weisenberger. Because it does not appear beyond doubt that AFC can prove no set of facts in support of its claim which would entitle it to relief against these Defendants, the Court denies Defendants' motion to dismiss.

**IV. Conclusion**

For the reasons stated above, Defendants' motion to dismiss (Record at 33) is **DENIED**.

**IT IS SO ORDERED.**

Date: April 20, 2005

/s/ John D. Holschuh
John D. Holschuh, Judge
United States District Court

11